### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BARBARA BUSKIRK,                                    Case No. 1:15-cv-144

              Plaintiff,                             Barrett, J.
                                                    Bowman, M.J.
     v.


COMMISSIONER OF SOCIAL SECURITY,

              Defendant.


### REPORT AND RECOMMENDATION

Plaintiff Barbara A. Buskirk filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents six claims for this Court's review in a 35-page Statement of Errors.[1]  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

Plaintiff filed applications for both Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") on September 27, 2011, alleging a disability onset date of October 2, 2007 primarily based upon bipolar disorder and depression (Tr. 238), although she later added some physical impairments.[2]  Plaintiff's applications were denied initially and upon reconsideration, and she timely requested an evidentiary

---

[1]Plaintiff did not seek leave of court to file excess pages, despite the fact that the brief is well in excess of the 20-page limit in the undersigned's standing order and the Court's Local Rules.
[2]None of Plaintiff's arguments on appeal address her physical impairments.

hearing. (Tr. 34-73).  In May 2013, Administrative Law Judge ("ALJ") Gregory Kenyon held a hearing, at which Plaintiff appeared with counsel.  Plaintiff, her case manager, and a vocational expert all testified.  ALJ Kenyon issued a decision on June 28, 2013, concluding that Plaintiff was not disabled.  (Tr. 19-28).  The Appeals Council denied review; therefore, the ALJ's decision remains as the final decision of the Commissioner.  Plaintiff filed the instant complaint in order to challenge the ALJ's decision.

Plaintiff was 37 years old at the time her alleged disability began, and was 43, still defined as a "younger individual," at the time of ALJ's decision.  She has an eighth grade education and past relevant unskilled work as a fast food worker, cleaner/janitor, food server, and grocery bagger.  (Tr. 26).

The ALJ determined that Plaintiff has the following "severe" impairments:  "mild cervical degenerative disc disease, depression, posttraumatic stress disorder (PTSD), a personality disorder, and a history of alcohol abuse."  (Tr. 21).  Because Plaintiff's claim of partial deafness was not supported by the medical record, the ALJ found no severe hearing impairment.  (Tr. 22).  The ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability.  (*Id.*).  Rather, the ALJ concluded that Plaintiff retained the following residual functional capacity ("RFC") to perform a range of medium work, except:

> [t]he claimant is precluded from climbing of ladders, ropes, or scaffolds and she cannot work around hazards such as unprotected heights or dangerous machinery. The claimant is also limited to performing unskilled, simple, repetitive tasks with occasional, brief superficial contact with co-workers and supervisors.  She cannot have public contact.  The jobs should not involve teamwork, tandem tasks, or sales transactions or negotiations.  The jobs should not involve rapid production pace work or strict production quotas. The claimant is limited to performing jobs in a relatively static work

environment in which there is very little, if any, change in the work routine from one day to the next. The claimant cannot have occupational exposure to alcohol.

(Tr. 24).

The vocational expert testified in response to a hypothetical that although someone with the above RFC could not perform most of Plaintiff's prior unskilled jobs, she could still perform the prior job of janitor. Nevertheless, the ALJ gave Plaintiff the "maximum benefit of the doubt" and found she could not perform *any* of her prior work. (Tr. 27). Despite being unable to perform prior work, the ALJ determined, based on the VE's testimony, that Plaintiff still could perform representative medium level jobs such as packer, material handler, or sorter. (*Id.*). Therefore, the ALJ concluded that Plaintiff is not under a disability. (Tr. 28).

In her Statement of Errors, Plaintiff argues that the ALJ erred by: (1) disregarding the opinion of examining psychological consultant Regina McKinney, Ph.D.; (2) improperly assessing Plaintiff's credibility; (3) failing to comply with "the required technique for analyzing mental impairments"; (4) granting significant weight to the opinion of non-examining consultants; (5) improperly evaluating Plaintiff's mental RFC; and (6) failing to give more weight to the testimony of Plaintiff's case manager. For the Court's convenience, the claims are considered in a different order than stated by Plaintiff, and two claims have been combined.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or

mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . .  The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

4

impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

**1.  Evaluation of Dr. McKinney's Report and Mental RFC**

Plaintiff first argues that the ALJ erred by disregarding the opinion of an examining psychological consultant, Regina McKinney, Psy.D.  Plaintiff was referred to Dr. McKinney for a one-time assessment.  The assessment was based primarily upon a clinical interview conducted on December 15, 2011, though Dr. McKinney's report reflects that she had access to limited medical records dated July 12, 2011.  (Tr. 564).

In her assertion of error, Plaintiff relies on regulations that state that the opinion of a treating physician ordinarily is entitled to the greatest weight.  Plaintiff's argument is misplaced in this regard; Dr. McKinney was not a treating physician and the cited

regulations do not apply. Plaintiff also incorrectly suggests that the ALJ completely rejected Dr. McKinney's report. Instead, the ALJ gave the opinion "limited weight."

Dr. McKinney did not complete a detailed RFC form but provided a partial functional assessment in narrative form, based upon Plaintiff's self-reported history, which Dr. McKinney believed to be reliable. (Tr. 569). Dr. McKinney noted that Plaintiff reported past difficulties learning job procedures and had difficulty in fast-paced environments (such as McDonald's), becomes easily overwhelmed, and opined that Plaintiff's attention and concentration "<u>may</u> deteriorate over extended time periods, slowing her performance in completing simple repetitive tasks." (*Id.*, emphasis added).

The remainder of Dr. McKinney's narrative opinions are similarly conditional and vague. For example, she opines that increased stress "<u>could</u> lead to increased anxiety and decreased attention and concentration skills, but <u>could</u> also result in increased frequency of manic episodes" and/or "<u>could</u> lead to increase depressive symptomatology including crying, withdrawal, slowed work performance and poor frustration tolerance." (*Id.*, emphasis added). The report concludes that "[s]tress and pressure <u>could</u> exacerbate [Plaintiff's] anger control difficulties," and "<u>could</u> lead to a relapse of excessive alcohol consumption." (Tr. 570, emphasis added).

Summarizing Dr. McKinney's report, the ALJ explained his analysis of her opinions:

> She diagnosed a bipolar disorder, PTSD, and alcohol dependence. Dr. McKinney estimated the claimant's GAF at 50, and identified significant limitations on the claimant's ability to understand, remember, and follow instructions, maintain attention, concentration, persistence and pace, and limitations regarding interaction with others and her ability to cope with stress. However, the restrictions identified in the residual functional capacity, including the limitation of unskilled, simple repetitive tasks, no rapid production pace work or quotas, superficial contact with co-workers

6

and supervisors and no public contact, and work in a relatively static work
environment, <u>fully accommodate the limitations identified by Dr. McKinney</u>.

(Tr. 26, emphasis added).  Specifically, to accommodate Plaintiff's difficulties in fast-

paced environments, the ALJ limited her to jobs without rapid production pace or

quotas.  To accommodate her difficulties getting along with others, he limited her to

work that requires only superficial contact with co-workers and supervisors and that

does not require contact with the public.  To address the possibility of worsened

symptoms including decreased concentration under stress, he restricted her to

unskilled, simple and repetitive work that was relatively static, and did not require sales

transactions or negotiations, and only limited interactions with others.  (Tr. 24).

In short, notwithstanding Plaintiff's accusation that the ALJ "ignor[ed] the report of

Dr. McKinney," (Doc. 11 at 12), the ALJ not only fully considered it, but ultimately

accommodated <u>all</u> relevant work limitations identified by Dr. McKinney.  In her initial

Statement of Errors, Plaintiff fails to identify any restriction that she feels should have

been adopted but was not.  However, in her reply memorandum, Plaintiff asserts that

the RFC fails to accommodate "Plaintiff's <u>potential</u> slowed performance in completing

simple repetitive tasks addressed," or "Plaintiff's <u>potential</u> anxiety and decrease in

attention and concentration skills," or her "[potential] slowed work performance and poor

frustration tolerance."  (Doc. 19 at 4, emphasis added).  For the reasons stated, the

undersigned disagrees and concludes that the ALJ adequately accommodated all

relevant limitations, by limiting her to jobs without rapid pace or quotas, and simple

repetitive work that was static with limited interactions with others.

Plaintiff argues that the ALJ should have "at least request[ed] by interrogatory or

telephone testimony to clarify any concerns the ALJ may have had with the opinions" of

Dr. McKinney, but does not initially explain what information the ALJ should have sought. In her reply memorandum, Plaintiff suggests that the ALJ should have re-contacted Dr. McKinney in order to obtain greater specificity on RFC limitations concerning "precisely what Dr. McKinney believes may occur and with what frequency." (Doc. 19 at 4). However, Plaintiff's view of the process would impose an impossible burden on the Commissioner that the regulations do not require. The ALJ's evaluation of Dr. McKinney's report, in conjunction with the full review of that report by the non-examining psychological consultants, was sufficient. Since the ALJ expressly accommodated all relevant work limitations and adequately explained the reasons for the weight he gave to Dr. McKinney's opinions, the undersigned can discern no error.

### Relationship of GAF Scores to Mental RFC

The only portion of Dr. McKinney's report that Plaintiff's Statement of Errors suggested was "ignored" was the assignment by Dr. McKinney of a "current" global assessment of functioning ("GAF") score of 50. In the same context, Plaintiff complains that the ALJ should have referenced a GAF score of 48, assessed on an intake form by a clinical counselor identified as "A. Barbera, PCC-S" who recommended that Plaintiff receive a "moderate" level of care/services on July 12, 2011. (Tr. 554-555). (Doc. 11 at 14). Rather than citing those two GAF scores, the ALJ instead referenced a GAF score of 58 found on a one-year follow-up assessment. (Tr. 26, citing "Annual Revision/Review" form at Tr. 631). Plaintiff mistakenly describes the higher score being recorded on intake rather than after treatment. Compounding that error, Plaintiff fails to recognize that - in contrast to the intake assessment - the higher score was assessed by a treating clinical social worker.

8

To the extent Plaintiff focuses on the two lower GAF scores, her argument is misguided. A GAF score is not dispositive of whether or not a claimant can work. *See Howard v. Com'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). In addition, notwithstanding two lower GAF scores, Plaintiff was assessed three times with scores from 55 to 60, reflecting no more than moderate symptoms. (*See e.g.*, Tr. 464 (GAF score of 55 on 12/5/2007); Tr. 519 (GAF score of 60 estimated in year prior to June 2011); Tr. 631 (GAF score of 58 on 8/29/2012). Given the range of scores, the ALJ's decision that Plaintiff's work limitations were moderate and not disabling is supported by substantial evidence. *See also DeBoard v. Com'r of Soc. Sec.*, 211 Fed. Appx. 411, 415 (6th Cir. 2006)(collecting cases affirming denial of benefits despite GAF scores of 50 or lower); *Turcus v. Soc. Sec. Admin.*, 110 Fed. Appx. 630, 632 (6th Cir. 2004)(affirming denial despite GAF score of 35).

In *Miller v. Com'r of Soc. Sec.*, ___F.3d ___, 2016 WL 362423 at *7 (6th Cir. Jan. 29, 2016), a case that involved three consistent GAF scores of 49 and 50, the Sixth Circuit recently confirmed its "case-by-case approach to the value of GAF scores." In *Miller*, the highest score of 50 was assessed after treatment. The Sixth Circuit remanded in part because the ALJ's assignment of limited weight to the three GAF scores did "not account for consistency among the examining sources and the record as a whole…." *Id.* at *8. The ALJ had found Miller's scores to be inconsistent with the claimant's daily activities and social functioning, but the appellate court noted factual errors in the ALJ's reliance on "isolated" portions of the record and significantly outdated function reports, as well as other misinterpretation of hearing testimony. The Sixth Circuit emphasized its heightened concern "in light of the Appeals Council's original

decision to remand for failure to adequately evaluate Miller's mental impairments" which focused on the low GAF and need for a consultative exam to determine if treatment improved Miller's condition.  *Id.* at *9.  Multiple other errors also required remand.[3]

*Miller* is distinguishable from this case by the inconsistency of the GAF scores and other factors.  Here, only two lower GAF scores existed, with higher GAF scores after treatment.  Despite finding the GAF score and mental functioning analysis to be one of multiple errors requiring remand in *Miller*, the court took pains to point out other cases in which the Sixth Circuit has "refused to find that a low GAF score established that the ALJ's decision was not supported by substantial evidence where the ALJ had reason to doubt the credibility of the assigning source; the claimant had conflicting GAF scores; the GAF scores were not accompanied by a suggestion that the claimant could not perform any work; substantial evidence supported the conclusion that the claimant was not disabled; and the VE testified that an individual with the claimant's limitations could still perform a number of jobs.  (*Id.* at *7, citations omitted).

### 2.  Weight Given to Non-Examining Psychological Consultants

`       After stating that "limited weight" was being given to Dr. McKinney's opinion (despite incorporating all work-related limitations), the ALJ went on to assess other medical opinion evidence. In so doing, the ALJ gave "significant weight to the assessments of the State Agency psychological evaluators who assessed that although

---

[3]For example, the first reason listed for reversal was because the ALJ gave the most weight to a physical RFC assessment that predated 5 years of significant treatment records, without providing any indication that the ALJ had considered that fact. In addition, the Sixth Circuit found reversible error in the district court's determination that James White was not a treating medical source, based upon information the court obtained outside the administrative record.

the claimant has severe psychological impairments, she is no more than moderately impaired due to those conditions." (Tr. 26).

Plaintiff complains that, due to a lack of a pinpoint citation by the ALJ, it is "extremely difficult" to determine to which consulting opinions the ALJ is referring. Plaintiff hypothesizes that the ALJ may be referring to either Exhibit 7F or Exhibit 14F, but notes that neither exhibit contains a complete psychological assessment.[4]  While the undersigned agrees that the omission of the proper exhibit numbers was regrettable, the undersigned cannot agree that the omission requires remand.  The only assessments of "State Agency psychological evaluators" contained in the administrative record other than the assessment of examining consultant Dr. McKinney are the two assessments of agency psychologists, Drs. Tishler and Zwissler, dated December 29, 2011 and March 2012.  (See Exhibits 2A, 3A, 5A and 6A).  Both reviewed an essentially complete record, including Dr. McKinney's report plus Plaintiff's prior records from Lifepoint Solutions, Clermont Mercy Hospital (3 admissions), and Batavia Family Practice records dating back to 2009.  (Tr. 79).

Two weeks after Dr. McKinney completed her report, Carl Tishler, Ph.D., reviewed Dr. McKinney's report and the totality of referenced records.  Unlike Dr. McKinney, Dr. Tishler offered complete opinions concerning Plaintiff's mental residual functional capacity. (Tr. 79-84, 90-95). Dr. Tishler acknowledged Plaintiff's mental health treatment history including three brief psychiatric hospitalizations, diagnoses of major depression, alcohol dependence and abuse, and substance induced mood

---

[4]Exhibit 14F is merely a referral form. Although Exhibit 7F purports to be an assessment form dated April 7, 2008, the form is blank but for the consultant's statement that Plaintiff "has decided not to pursue her claim" and therefore submitted no evidence to evaluate the degree of any mental impairment, leading to the lack of any conclusions for "insufficient evidence."  (Tr. 466-478).

disorder.  However, he also cited treatment records that demonstrated Plaintiff was cooperative, well-groomed, and had good judgment.  (Tr. 79-84, 90-95).  Dr. Tishler gave "great weight" to Dr. McKinney's narrative report in developing specific RFC opinions, finding that Plaintiff had "moderate" impairment in nearly all areas, but no episodes of decompensation of extended duration.[5]  (Tr. 80-82, 91-93).  Dr. Tishler determined that Plaintiff retained the mental RFC to comprehend, remember, and carry out simple tasks and instructions, relate to others on a superficial basis, and perform work in a routine and predictable setting.  (Tr. 82-83, 93-95).  However, he opined that she would do better in an environment where she was not required to perform tasks that required a collaborative effort.  Little more than two months later on March 6, 2012, Mel Zwissler, Ph.D., affirmed Dr. Tishler's opinions on reconsideration, based upon updated Lifepoint records obtained after July 2011.  (Tr. 103-107, 114-119).

Notably, the ALJ's mental RFC assessment was nearly identical to the opinions provided by Drs. Tishler and Zwissler. (*Compare* Tr. 26 with Tr. 80, 91, 104, 115).  The ALJ disagreed with the consultants only as to Plaintiff's activities of daily living, which the ALJ rated as "mildly rather than moderately impaired." (Tr. 26).  Plaintiff contends even if the ALJ was referring to the opinions of Drs. Tishler and Zwissler (a conclusion that is inescapable for the reasons stated), that remand is still required because the ALJ did not offer a sufficiently good explanation for his disagreement with "moderate" limitations in Plaintiff's activities of daily living.

---

[5]Episodes of decompensation of extended duration are generally defined as requiring hospitalization for more than two weeks.  Plaintiff's psychiatric hospitalizations were briefer in duration.

The undersigned finds no cause for remand on this issue.  Even if the ALJ had found "moderate" limitations in Plaintiff's activities of daily living ("ADLs"), that would not appear to change the outcome of this case.  Plaintiff fails to offer any explanation as to how allegedly moderately impaired ADLs impacted her ability to do work or caused more severe work limitations than the ALJ assessed.  Importantly, the ALJ included every single work-related restriction and limitation noted by Dr. Tishler and Zwissler in Plaintiff's mental RFC limitations.[6]  It is also worth noting that, while the ALJ found Plaintiff's ADL limitations to be less severe than opined by the non-examining consultants, the ALJ found "episodes of decompensation" of extended duration even though the consultants found no episodes that satisfied the "extended duration" requirement.

While regulations require the articulation of "good reasons" for rejecting the opinion of a "treating physician," no similar regulatory or case authority requires an ALJ to cite to specific evidence when failing to credit an opinion of a non-examining consultant.  The ALJ's opinion is to be affirmed so long as it is supported by substantial evidence in the record as a whole.  Even though the ALJ found a less severe level of restriction in Plaintiff's activities of daily living than determined by Drs. Tishler and Zwissler, the ALJ offered some explanation and substantial evidence exists to affirm the decision.  For example, the ALJ discussed evidence concerning Plaintiff's activities of daily living, including her function report and her testimony at the hearing concerning

---

[6]Plaintiff baldly asserts that the "correct RFC would have left the claimant with nothing less than an inability to engage [in] Substantial Gainful Activity."  However, no medical source found Plaintiff to be disabled.  No treating psychologist or psychiatrist rendered any opinions on Plaintiff's mental limitations, and the only consultants who offered opinions found Plaintiff to be no more than moderately impaired.

her abilities to grocery shop, cook, do dishes, walk her dog, clean the house, and do laundry. (Tr. 23).

Plaintiff argues that activities of daily living do not establish an ability to perform full-time work on a sustained basis. *See generally Gayheart v. Com'r*, 710 F.3d 365 (6th Cir. 2013); *see also Miller, supra* (citing *Gayheart*). That is undoubtedly a correct statement of the law, but the ALJ did not rely solely on Plaintiff's ADLs to find her capable of full-time work. Rather, the ALJ appropriately reviewed Plaintiff's ADL's in assessing her credibility and the record as a whole, including medical evidence of more moderate limitations. *See* 20 C.F.R. §404.1529(c)(3)(i); *Yates v. Colvin*, 940 F. Supp.2d 664, 674 (S.D. Ohio 2013)(citing *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004)). Unlike the recent *Miller* case, in reviewing this record, the undersigned finds no reversible error in the manner in which the ALJ reviewed Plaintiff's ADLs.

In the end, Plaintiff concedes that it is not error to credit the opinion of a non-examining consultant if that opinion "is based on a review of a complete case record that includes a medical report from a specialist … which provides more detailed and comprehensive information than what was available to the individual's treating source." SSR 96-6p, 1996 WL 374180 at *3 (July 2, 1996). Here, no treating psychiatrist or psychologist offered any RFC opinions. The ALJ had at his disposal: (1) vague narrative opinions of an one-time examining consultant who performed no testing and had limited access to Plaintiff's records; and (2) two very specific RFC opinions of non-examining consultants who reviewed both the examiner's report and virtually complete historical treatment records.

14

In a single sentence in her reply memorandum, Plaintiff points out that Drs. Tishler and Zwissler did not have access to her most recent Lifepoint records, to the extent that some records post-dated their reports.  (*See* Doc. 19 at 6).  However, the ALJ both acknowledged and discussed the later records, including the fact that they reflected overall improvement in Plaintiff's psychological condition.

The regulations state that it is the ALJ who is responsible for determining a claimant's RFC based on the evidence as a whole.  *See* 20 C.F.R. §§404.1546(c); 416.946(c)("the administrative law judge…is responsible for assessing your residual functional capacity."); *see also Coldiron v. Com'r of Soc. Sec.,* 391 Fed. Appx. 435, 439 (6th Cir., Aug. 12, 2010)(confirming that the "responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician.").  "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rending an RFC finding."  *Id.*; *see also* 20 C.F.R. §§404.1527. 416.927, "the final responsibility for deciding these issues [RFC and disability] is reserved to the Commissioner."  On the record presented, the ALJ complied with SSR 96-6p when he gave the greatest weight to the opinions of Drs. Tishler and Zwissler and in his formulation of Plaintiff's mental RFC.

### 3.  Required Technique for Analyzing Mental Impairments

Plaintiff asserts that the ALJ failed to comply with the requisite technique that must be used to analyze mental impairments, pursuant to 20 C.F.R. §404.1520a. Plaintiff charges that the ALJ "failed to consider the four regulatory factors of activities of daily living; concentration, persistence or pace, social functioning; or episodes of decompensation."  (Doc. 11 at 21).

Plaintiff is wrong on this point.[7] The ALJ's written decision includes findings concerning the degree of Plaintiff's limitations in each of the four functional areas, commonly referred to as the "paragraph B criteria." (See Tr. 23). The ALJ concluded that Plaintiff had mild limitations in her ADLs, moderate limitations in social functioning, and moderate limitations in concentration, persistence or pace. He further found she had experienced "one or two" episodes of decompensation of extended duration.[8] (Tr. 23).

Plaintiff also complains that the ALJ got it wrong when it came to the evaluation of her ADLs, because he omitted some evidence that was favorable to Plaintiff. For example, Plaintiff testified that she does not pay her bills but relies upon her ex-husband, with whom she lives, to do so. In addition, although the ALJ accurately noted that Plaintiff grocery shops, cooks, does dishes, cleans her house, does laundry, and walks her dog, she asserts he failed to discuss her testimony that she loses concentration and forgets what she is doing when cooking or baking. (Tr. 44). Plaintiff also testified that her ex-husband helps with household chores. (Tr. 50). In response to her attorney's inquiry whether she "linger[ed] around and talk[ed]" during her grocery trips with her friend so that it was a "social" outing, Plaintiff replied "[w]e don't hang out at the store." (Tr. 59). Last, Plaintiff testified that although she watches a lot of TV, she doesn't recall what she watches and has no other hobbies. She complains that the ALJ

---

[7]Plaintiff's arguments are inconsistent. She argues both that the ALJ failed to address the paragraph B criteria, and that the ALJ erred in the conclusions he reached when making that assessment.

[8]As stated, this last finding is contrary to the opinions of consultants who found no incidents of psychiatric hospitalizations of the requisite duration. (See Tr. 80). The ALJ's contrary favorable finding reflects – at most – harmless error.

merely referred to her grocery shopping without noting the "exact nature of the trips to the grocery store." (Doc. 11 at 20).

The ALJ's failure to discuss the minutiae of Plaintiff's testimony, such as the fact that she did not linger at the grocery store to socialize, does not constitute reversible error. *See e.g., Bailey v. Com'r of Soc. Sec.*, 2011 WL 850334 at *2 (6th Cir. Marc. 11, 2011)(holding that the ALJ "is not required to analyze the relevance of each piece of evidence individually."). This is particularly true with regard to Plaintiff's testimony, which the ALJ partially discredited, as discussed below.

### 4. Weight Given to Testimony of Witness, Plaintiff's Case Manager

Plaintiff's case manager, Mr. Curtis Edwards, appeared and provided testimony at the hearing. Plaintiff testified that she had seen Mr. Edwards every two weeks for approximately two years. (Tr. 48). Mr. Edwards identified himself as Plaintiff's "recovery coordinator" at Lifepoint, and described his role as assisting Plaintiff with "symptom management skills, advocacy, [and] helping [her] to maintain benefits."[9] (Tr. 63-64). Plaintiff is one of 69 clients on his caseload. (Tr. 65). Mr. Edwards, who is not a qualified medical source, offered the sole opinion that Plaintiff was disabled from full-time work. He explained his belief that Plaintiff was disabled due to "anger and paranoia" issues. He stated: "[M]y concern would be that when she got to work or the first time somebody said something negative to her or she had a bad exchange with somebody, it would – it would kind of create some paranoia around there and over time it would just build until she couldn't take it anymore." (Tr. 65-66).

---

[9]Although the ALJ did not discuss bias, Mr. Edwards' description of his role as an "advoc[ate]" who helps to "maintain benefits" raises an issue of whether his testimony is completely objective.

17

The ALJ accurately summarized Mr. Edwards' testimony, which included the opinions that Plaintiff "has had a lot of stability" but could not live on her own without her ex-husband. (Tr. 25, citing Tr. 64). Mr. Edwards testified that he had not observed or heard reported any alcohol abuse.[10] (*Id.*). After summarizing Mr. Edwards' testimony, the ALJ gave it only "limited weight," citing the fact that Mr. Edwards "is not a medically acceptable source..., and his opinion that the claimant is unable to live alone or interact with others… is not consistent with the Lifepoint treatment records in September and October 2012 which show no more than moderate symptoms in the absence of alcohol abuse." (Tr. 25).

Mr. Edwards is not an "acceptable medical source" because he is not a physician or psychologist. *See, e.g.* 20 C.F.R. §404.1513(a), 416.913(a)("We need evidence from acceptable medical sources….Educational personnel including counselors and early intervention team members are not 'acceptable' sources"). In fact, whether Mr. Edwards is another type of medical source, or a "non-medical source" such as someone from a welfare agency or a rehabilitation counselor, remains unclear. Nevertheless, the regulations require consideration of his opinion in the same manner as all other relevant evidence is to be considered. *See generally Gayheart*, 710 F.3d at 378 (citing SSR 06-3p for the proposition that although "therapists do not qualify as 'acceptable medical sources' under the regulations, an ALJ must consider all relevant evidence in the case record.").

---

[10]Mr. Edwards testified at a hearing held in May 2013. Plaintiff's last documented incidence of alcohol intoxication appears to have been 23 months earlier, in June 2011. (Tr. 22).

Plaintiff argues that the ALJ should have placed more weight on Mr. Edwards' opinions because he has observed Plaintiff regularly over a two-year period,[11] and because his testimony was "consistent with" Plaintiff's two lowest GAF scores. (Doc. 11 at 17). But since Mr. Edwards was not an acceptable medical source his testimony was not entitled to any special weight. The ALJ correctly identified Mr. Edwards as Plaintiff's case manager and properly evaluated his opinions, finding them to be inconsistent with other substantial evidence, including but not limited to LIfepoint records, that reflected more moderate, non-disabling symptoms. (Tr. 25). In fact, although Plaintiff asserts that Mr. Edwards' testimony was in lock-step with Dr. McKinney's report, it clearly was not. For example, although Mr. Edwards opined that Plaintiff could not live on her own, Dr. McKinney noted that her "judgment appears to be sufficient for her to make decisions affecting her future and to conduct her own living arrangements efficiently." (Tr. 568). And Dr. McKinney expressed no opinion that Plaintiff was disabled from all work.

Plaintiff also suggests that the ALJ mischaracterized Mr. Edwards' testimony by focusing on Plaintiff's "stability." The complete sentence of Mr. Edwards' testimony reads: "[W]e had a lot [of] stability but overtime [sic] we've had to change her medicine back and forth when the voices come at night." (Tr. 64). In her reply memorandum, Plaintiff focuses on records that reflect that Plaintiff's symptoms required medication changes over time.

I find no error in the failure of the ALJ to quote the last half of the referenced sentence. Mr. Edwards is not a physician. Still, the ALJ specifically discussed the

---

[11]The ALJ acknowledged that Plaintiff saw Mr. Edwards and her therapist every two weeks, and a nurse at Lifepoint every four to six weeks. (Tr. 25).

19

medication changes reflected in the medical records, which largely amounted to decreases and elimination of multiple medications.  Thus the ALJ did not inappropriately mischaracterize the record by referring to Plaintiff's "stability."  The fact that a particular scrap of testimony might have been interpreted more favorably to the plaintiff does not require remand, so long as the interpretation chosen by the ALJ was within a reasonable "zone of choice."  Courts may not "reweigh conflicting evidence on appeal, but instead must affirm" if substantial evidence supports the ALJ's decision.  *Haun v. Com'r of Soc. Sec.*, 107 Fed. Appx. 462 (6th Cir., Aug. 2, 2004).

### 5.  Assessment of Plaintiff's Credibility

Plaintiff contends that the ALJ erred by failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. §404.1529 in evaluating her credibility.  In particular, she argues that the ALJ's adverse credibility finding was conclusory and lacked any specificity at all.  She asserts that there is "nothing contained in the record which would effectively refute" Plaintiff's own testimony that her mental health impairment was work-preclusive.  (Doc. 11 at 17).  She contends that her testimony regarding the severity of her symptoms is "supported by and consistent with" the records of Lifepoint Solutions, Dr. McKinney's report, and the testimony of Mr. Edwards.

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is

proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

The ALJ stated his credibility determination as follows: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 25). Contrary to Plaintiff's argument, the ALJ's opinion explains those reasons. For instance, the ALJ cited both general and specific "inconsistencies between the claimant's testimony and therapy notes." (Tr. 25). In September and October 2012, Plaintiff reported that her depression was "not severe" to providers at LIfepoint. (Tr. 618). She also reported lessened symptoms regarding mood swings and anger issues, (Tr. 578, 618), denied auditory or visual hallucinations, reported her energy level was good, and reported she was having no trouble with her medications. (Tr. 25). She described her depression as relatively mild. (Tr. 456, 460). She denied suicidal/homicidal ideations, and her hygiene and grooming were good. In fact, medical records showed that most of her psychiatric medications were decreased or discontinued in October 2012, which also supports the ALJ's determination that her symptoms had "improved and that she is no more than moderately impaired," contrary to her testimony that her symptoms were disabling. (Tr. 25-26; see also Tr. 615). In August 2012, Plaintiff was assigned a GAF score of 58. (*Id.*).

In her reply memorandum, Plaintiff argues that the Commissioner ignores the reality that Plaintiff experiences "good days and bad days" in her mental illness, but that even when her symptoms subside, "she is not managed to the point that treatment is no longer necessary." (Doc. 19 at 9). Plaintiff's argument contains the false premise that those who suffer from chronic depression or other chronic mental illness are incapable of work. But, with the limited exception for illness that meets or equals a Listing, that is not how the regulations work. Many people with chronic mental illness remain capable of some unskilled work, in the same way that many with chronic physical illness are not fully disabled, despite significant limitations.

Here, the ALJ cited to specific medical records that were inconsistent with the disabling level of symptoms to which Plaintiff ascribed. Plaintiff's own reports to her treating physician at Lifepoint were among those inconsistent records. For the reasons discussed *infra*, the assessments of Drs. McKinney, Tishler and Zwissler also supported the ALJ's determination that Plaintiff's symptoms were not at a disabling level.

The ALJ's credibility determination also noted inconsistent reports regarding Plaintiff's physical symptoms. Plaintiff did not allege any cervical disc problems until the hearing level, after Plaintiff obtained testing that showed mild degenerative disc disease. Plaintiff was undergoing no ongoing treatment, such as physical therapy or prescription medication, for that condition. (Tr. 26). Similarly, no medical records supported Plaintiff's allegations of deafness. (Tr. 22). Another contradiction was that Plaintiff testified that she could not read a newspaper or a comic book, but reported that she could read her own grocery list, and wrote out her own Function Report and Work History Report. (Tr. 22).

22

The ALJ pointed to other inconsistent reports as well.  For example, Plaintiff testified that she had no friends other than her neighbor, (Tr. 47), but previously told the agency that she lived with friends.  (Tr. 270).  Similarly, she told Dr. McKinney that she had two friends she had contact with. (Tr. 566).  Although she reported to the agency that she could not "handle being around people," she stated that she went shopping one or two times per week.  (Tr. 273).  Therefore, the ALJ's adverse credibility assessment and corresponding conclusion that Plaintiff is limited but not disabled, is supported by substantial evidence in the record as a whole.

### III. Conclusion and Recommendation

In *Miller*, the Sixth Circuit recently reiterated that judicial review is "limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."    *Id.* at *5 (internal quotation omitted).  Substantial evidence is generally defined as "'more than a mere scintilla' but less than a preponderance." *Id.*; *see also Gaffney v. Bowen*, 825 F.2d 98 (6th Cir. 1987).  While Plaintiff may debate whether substantial evidence exists to support a contrary determination, this Court is barred from reversing on that basis, where, as in the record presented, substantial evidence exists to support the Commissioner's determination and no reversible legal error exists.

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED**.

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

23

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BARBARA BUSKIRK,                                        Case No. 1:15-cv-144

                Plaintiff,                              Barrett, J.
                                                       Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).